# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**PAMELA DAVIS LYLES**                                    **CIVIL ACTION**

**VERSUS**                                                **NO: 23-7400**

**K&B LOUISIANA**
**CORPORATION, ET AL.**                                   **SECTION "H"**

## ORDER AND REASONS

Before the Court is Defendants Johnson & Johnson and Pecos River Talc LLC's Motion to Dismiss Plaintiff's Punitive Damages, Civil Conspiracy, Unreasonably Dangerous *Per Se*, LUTPA, and Breach of Express Warranty Claims (Doc. 66). For the following reasons, Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

This case arises out of Plaintiff Pamela Davis Lyles's diagnosis of peritoneal mesothelioma that she alleges was caused by years-long use and handling of asbestos-contaminated baby powder and cosmetic products and para-occupational exposures to asbestos-containing friction brake products from her husband's clothing. On October 23, 2023, Plaintiff filed suit in the Civil District Court for the Parish of Orleans against several parties, including K&B Louisiana Corporation d/b/a Riteaid Corporation; Johnson & Johnson; Johnson & Johnson Consumer Companies Inc.; Colgate-Palmolive Company; Honeywell International, Inc. (collectively, the "Talc Defendants") and several

direct-action insurer defendants. The case was removed to this Court on December 27, 2023, pursuant to 28 U.S.C. § 1452(a) and Rule 9027 of the Federal Rules of Bankruptcy Procedure.

At issue in this Motion are Plaintiff's claims against Johnson & Johnson and Johnson & Johnson Consumer Companies Inc. In her Petition, Plaintiff alleges that beginning in 1956, she was exposed to Johnson & Johnson's asbestos-contaminated talcum baby powder as an infant and toddler. She alleges that between 1969 and the 1990s she continued to use Johnson & Johnson's talc baby powder and Shower to Shower products frequently, often daily. Plaintiff brings claims for negligence, strict liability, product liability, civil conspiracy, and punitive damage against both Johnson & Johnson and Johnson & Johnson Consumer Companies, Inc. Plaintiff also brings claims for unfair and deceptive acts under the Louisiana Unfair Trade Practices Act ("LUTPA"), fraudulent concealment, intentional spoliation of evidence, failure to warn, breach of warranty, and defective design claims against Johnson & Johnson. On February 20, 2025, the Court granted a consent motion to substitute Pecos River Talc LLC ("Pecos River") for Johnson & Johnson Consumer Companies, Inc.[1]

Now before the Court, Defendants Johnson & Johnson and Pecos River move to dismiss some of the claims against them. Plaintiff partially opposes.[2] The Court may not, however, simply grant the instant motion as unopposed. The Fifth Circuit approaches the automatic grant of dispositive motions with

---

[1] Doc. 68.

[2] Doc. 70. Plaintiff only addresses Defendants' arguments regarding her "unreasonably dangerous *per se*" claims in her Opposition. *Id.* In their Reply, Defendants "withdraw their Motion to Dismiss to the extent it pertains to Plaintiff's unreasonably dangerous per se claims." Doc. 72 at 2. As such, the Court will not consider those claims here.

considerable aversion.[3] As such, the Court will consider Defendants' arguments in turn.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."[4] A claim is "plausible on its face" when the pleaded facts allow the court to "[d]raw the reasonable inference that the defendant is liable for the misconduct alleged."[5] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[6] The Court need not, however, accept as true legal conclusions couched as factual allegations.[7]

To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[8] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice.[9] Rather, the complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim.[10]

---

[3] *See, e.g.*, Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc., 702 F.3d 794, 806 (5th Cir. 2012); Johnson v. Pettiford, 442 F.3d 917, 918 (5th Cir. 2006) (per curiam); John v. State of Louisiana (Bd. of Trs. for State Colls. and Univs.), 757 F.2d 698, 709 (5th Cir. 1985).
[4] Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007)).
[5] *Id.*
[6] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).
[7] *Iqbal*, 556 U.S. at 667.
[8] *Id.*
[9] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).
[10] *Lormand*, 565 F.3d at 255–57.

## LAW AND ANALYSIS

Defendants Johnson & Johnson and Pecos River move to dismiss Plaintiff's claims for punitive damages, civil conspiracy, unreasonably dangerous *per se*, LUTPA, and breach of express warranty. Plaintiff responded in opposition only to Defendants' motion regarding the unreasonably dangerous per se claims. In their Reply, Defendants "withdraw their Motion to Dismiss to the extent it pertains to Plaintiff's unreasonably dangerous per se claims."[11] As such, the Court will not consider those claims here. This Court will consider Defendants' arguments as to each of Plaintiff's other claims in turn.

### I.    Punitive Damages

Defendants move to dismiss Plaintiff's claim for punitive damages under Louisiana law because such damages are not permitted unless expressly authorized by statute and there is no such statute applicable here. Defendants further argue that even if Plaintiff is attempting to expand Louisiana Civil Code Article 2315.3, which was repealed by Louisiana Acts 1996, No. 1, to cover her product liability claims, the Court should not permit it because her allegations of liability do not pertain to conduct covered by the article's terms. Plaintiff has not opposed.

"In Louisiana, there is a general public policy against punitive damages; thus, a fundamental tenet of our law is that punitive or other penalty damages are not allowable unless expressly authorized by statute."[12] "Additionally, such statutes are to be strictly construed."[13] Here, Plaintiff's claims for punitive

---

[11] Doc. 72 at 2.
[12] Ross v. Conoco, Inc., 2002-0299, p. 14 (La. 10/15/02), 828 So. 2d 546, 555.
[13] Simoneaux v. Taylor Seidenbach, Inc., 708 F. Supp. 3d 821, 826, n.2 (E.D. La. 2023) (Zainey, J.).

damages against Johnson & Johnson and Pecos River cannot survive under current Louisiana law because there is no statute that authorizes such.

Prior Article 2315.3 authorized punitive damages, but it has been repealed. However, "Louisiana courts have continued to recognize the viability of this statute so long as some of the activity occurred while the statute was still in effect, relying on section 2 of the Act, which states that the provisions are only applicable to those causes of action arising on or after the effective date."[14] "Prior to its repeal in 1996, Article 2315.3 provided in pertinent part:

> In addition to general and special damages, exemplary damages may be awarded, if it is proved that plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances."[15]

To obtain an award of punitive damages under Article 2315.3,

> the plaintiff must show that (1) the defendants' conduct was wanton and reckless, which requires a showing of a disregard of an excessive degree of danger that they knew or should have known about; (2) the danger threatened or endangered public safety; (3) the activity "occurred in the storage, handling or transportation of hazardous or toxic substances"; and (4) the plaintiff's injury was caused by this conduct.[16]

Because Plaintiff's claims against Defendants Johnson & Johnson and Pecos River arise out of her personal use of their products, Plaintiff does not allege that her injuries "occurred in the course of the storage, handling, or transportation of the baby powder; rather, it is fully premised on the manufacturing and labeling of the product."[17] "[C]onduct . . . within the realm of products liability, lies outside the scope of article 2315.3."[18] Accordingly,

---

[14] *Id.*

[15] Bonnette v. Conoco, Inc., 837 So.2d 1219, 1237 (La. 2003), (citing La. Civ. Code. art. 2315.3).

[16] *Id.* (quoting Bonnette v. Conoco, Inc., 837 So. 2d 1219, 1237 (La. 2003)).

[17] *Simoneaux*, 708 F. Supp. 3d at 827.

[18] Williams v. A.C. & S., Inc., 700 F. Supp. 309, 310 (M.D. La. 1988).

repealed Louisiana Civil Code Article 2315.3 does not apply here.[19] Plaintiff's claim for punitive damages from Defendants Johnson & Johnson and Pecos River must be dismissed.

## II. Civil Conspiracy

In her Petition, Plaintiff alleges that the Talc Defendants "conspired among themselves and with other entities to cause [her] injuries by exposing her to harmful and dangerous asbestos-containing and asbestos-contaminated talcum products."[20] Movants move to dismiss Plaintiff's civil conspiracy claim because it is unsupported by Louisiana law.

"The Louisiana Supreme Court has held that conspiracy by itself is not an actionable claim under Louisiana law."[21] Instead, the only actionable element of a conspiracy claim is "the intentional tort the conspirators agreed to commit and committed in whole or in part causing plaintiff's injuries."[22] "[C]ourts are entitled to glean the underlying intentional tort in a civil conspiracy claim, where such a conclusion is reasonable."[23] To survive a motion to dismiss, a plaintiff "must plead with particularity the conspiracy as well as the overt acts . . . taken in furtherance of the conspiracy due to the stricter pleading requirements for fraud."[24] Further, when pleading fraud, "[a]t a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud."[25]

Here, Plaintiff brings a civil conspiracy claim against the Talc Defendants. She asserts "that the purported members of the conspiracy

---

[19] *See Bonnette*, 837 So.2d at 1237.

[20] Doc. 1-2, ¶102.

[21] Ames v. Ohle, 2011-1540, p. 11 (La. App. 4 Cir. 5/23/12) 97 So.3d 386, 393.

[22] Rhyce v. Martin. 173 F. Supp. 2d 521, 535 (E.D. La. 2001).

[23] *Simoneaux*, 708 F. Supp. 3d at 827 (citing Ames, 97 So.3d at 393-94)).

[24] *Id.* at 828 (quoting U.S. *ex rel.* Grubbs v. Kanneganti, 565 F.3d 180, 193 (5th Cir. 2009)).

[25] U.S. *ex rel.* Thompson v. Columbia/HCA Healthcare Corp., 125 F.3d 899, 903 (5th Cir. 1997) (quoting Williams v. WMX Tech., Inc., 112 F.3d 175, 179 (5th Cir. 1997)).

performed a series of overt acts in furtherance of the conspiracy to willfully misrepresent and suppress the truth of the alleged risks of their talc products."[26] Plaintiff further avers that these overt acts include, *inter alia*, withholding knowledge about the risks their products posed; allowing misleading information to be disseminated; distorting results of medical examinations; fraudulently misrepresenting the risks their products posed to the public and public officials;  and creating "trade organizations to establish authoritative tests and standards for the control of asbestos contamination in talc . . . [to] act as a defense in personal injury lawsuits, despite knowing that compliance with such standards would not protect workers such as" herself.[27] Plaintiff further alleges that she "reasonably and in good faith relied upon the false and fraudulent representations, omissions, and concealments made by Defendants regarding the nature of their asbestos-containing and asbestos-contaminated talcum products" and on those bases was injured by the Talc Defendants' joint activity.[28]

In *Simoneaux v. Taylor Seidenbach, Inc.*, Judge Zainey found that the plaintiff's civil conspiracy claim against Defendant Johnson & Johnson survived a motion to dismiss by similarly naming purported members of the conspiracy even though he did "not state explicitly which of the Talc Defendants committed each specific act."[29] Contrastingly to the instant case, though, the plaintiff in *Simoneaux* included specific information in his allegation of overt acts, such as the dates that reports of allegedly false information were disseminated, the name of a specific group influenced by their threats of litigation, and the title of a specific program to which the

---

[26] *Simoneaux*, 708 F. Supp. 3d at 828.
[27] Doc. 1-2, ¶¶102–105.
[28] *Id.*, ¶107–108.
[29] *Simoneaux*, 708 F. Supp. 3d at 828.

conspirators allegedly submitted doctored reports.[30] No such specifics can be found in Plaintiff's Petition. The Court finds that the lack of specificity regarding the "what" and "when" of the Talc Defendants' alleged conspiratorial acts makes Plaintiff's civil conspiracy claim insufficiently pled. As such, Plaintiff's claims should be dismissed without prejudice.

### III.    Unfair and Deceptive Acts under LUTPA

Defendant Johnson & Johnson moves to dismiss Plaintiff's LUTPA claim as untimely and for failure to state a claim. Plaintiff has not opposed. LUTPA provides a private right of action to any person injured by "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[31] The Court will consider each argument in turn.

### i.    Timeliness

Plaintiff's LUTPA claim arises from her use of Johnson & Johnson products from 1956 through the 1990s; therefore, according to Defendant, "the peremptive period on Plaintiff's claim accrued over twenty years ago."[32] At the time of Plaintiffs' alleged injuries, Louisiana Revised Statutes § 51:1409(E) provided that a "private LUTPA action 'shall be prescribed by one year running from the time of the transaction or act which gave rise to this right of action.'"[33] Despite its plain terms, a number of courts interpreting this provision held that this one-year time period was peremptive, rather than prescriptive.[34] As a matter of law, a  peremptive period may not be renounced, interrupted, or

---

[30] *See id.*

[31] LA. REV. STAT. §§ 51:1409A, 51:1405A.

[32] Doc. 66-1 at 10.

[33] "Prior to its amendment by 2018 La. Acts, No. 337," Louisiana Revised Statutes § 51:1409(E) stated that the private LUTPA action "shall be prescribed by one year running from the time of the transaction or act which gave rise to this right of action." Law Indus., LLC v. Dep't of Educ., 378 So.3d 3, 10 n.2 (La. 2024) (quoting LA. REV. STAT. § 51:1409(E) (2006)).

[34] *Law Indus., LLC*, 378 So.3d at 10 n.2 (collecting cases).

suspended.[35] Effective August 1, 2018, however, § 51:1409(E) was amended to provide that a LUTPA cause of action "shall be subject to a *liberative prescription* of one year running from the time of the transaction or act which gave rise to this right of action."[36]

Louisiana Civil Code article 6 provides that "[i]n the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary." Here, § 51:1409(E) does not expressly state whether it applies retroactively. Under Louisiana law, generally, "prescriptive periods relate to the remedy and are therefore treated as procedural laws and applied retroactively."[37] "The Louisiana Supreme Court has specified two exceptions to this rule of retroactivity for prescriptive statutes: the statute is not retroactive where such application would (1) strip a party of a vested right, or (2) revive an already prescribed cause of action."[38]

As to the first, "when a party acquires a right either to sue for a cause of action or to defend himself against one, that right becomes a vested property right and is protected by due process guarantees."[39] As to the second, "the Louisiana Supreme Court has explicitly declined to retroactively apply a prescription statute to revive an already prescribed cause of action."[40] This is so because

> [a]lthough prescriptive statutes are generally procedural in nature, the revival of an already prescribed claim presents additional concerns. For while the defendant does not acquire anything during the running of the prescriptive period, once the

---

[35] La. Civ. Code art. 3461.
[36] *Law Indus., LLC*, 378 So.3d at 10 n.2 (citing LA. REV. STAT. § 51:1409 (E)).
[37] Chance v. Am. Honda Motor Co., 635 So.2d 177, 178 (La. 1994).
[38] Holt v. State Farm Fire & Cas. Co., 627 F.3d 188, 193 (5th Cir. 2010) (citing Lott v. Haley, 370 So.2d 521, 523 (La. 1979)).
[39] *Id.* (citing Falgout v. Dealers Truck Equip. Co., 748 So.2d 399, 407 (La. 1999)).
[40] *Id.* (citing *Chance*, 635 So. 2d at 179)).

time period has elapsed, the legislature grants the defendant the
right to plead the exception of prescription in order to defeat the
plaintiff's claim.[41]

Thus, "because the defendant acquires the right to plead the exception of
prescription, a change in that right constitutes a substantive change in the law
as applied to the defendant."[42] "If a statute which is remedial or procedural
also has the effect of making a change in the substantive law, it must be
construed to operate prospectively only."[43]

Here, neither party addresses the issue as to which law applies. It does
not appear to this Court that any judge in this district has analyzed whether
the current version of Louisiana Revised Statutes § 51:1409(E) is retroactively
applied to an alleged pre-amendment LUTPA claim considered after the 2018
amendment. In *Trinity Medical Services, L.L.C. v. Merge Healthcare Solutions,
Inc.*, however, the United States District Court for the Middle District of
Louisiana analyzed what law applied at the time of the plaintiff's 2016 LUTPA
claim to determine whether the doctrine of *contra non valentem* could protect
plaintiff's claim.[44] The Court finds it instructive. The defendant in *Trinity
Medical* asserted that the plaintiff's LUTPA claim was untimely because §
51:1409(E) is a peremptive period, and the doctrine of *contra non valentem*
therefore could not apply.[45] Reasoning that because "[t]he changes to the
statute merely clarify the old law rather than change it substantively," and
"the retroactive application of Louisiana Revised Statutes § 51:1409(E) would
not revive an already prescribed cause of action," the court found that
plaintiff's 2016 LUTPA claim would not have prescribed under the plain *or*

---

[41] *Id.*
[42] *Id.* (citing St. Paul Fire & Marine Ins. v. Smith, 609 So.2d 809, 817 (La. 1992).
[43] *Id.* (citing Thomassie v. Savoie, 581 So.2d 1031, 1034 (LA. App. 1 Cir. 1991)).
[44] No. CV 17-592-JWD-EWD, 2018 WL 3748399, at *1 (M.D. La. Aug. 7, 2018).
[45] *Id.* at *8.

revised statutory language.[46] As such, the court found that "the new statutory language does not change the prescriptive period . . . ; it simply reiterates that the time period at issue is a liberative prescriptive period rather than a peremptive period (as the old statute had been construed in spite of its plain language)."[47] Accordingly, the court concluded that "the general rule of retroactive application for statutes contemplating prescriptive periods" was appropriate and "that Louisiana Revised Statute § 51:1409(E) contemplates a one-year prescriptive period."[48] Considering this, the court ultimately denied dismissal of the plaintiff's LUTPA claim, holding that the claim had not prescribed due to the applicability of *contra non valentem*.[49]

The Court, finding the Middle District's reasoning in *Trinity Medical* compelling, agrees that Plaintiff's LUTPA claim is governed by a one-year prescriptive period, not a one-year peremptive period as Defendant argues.[50] Pursuant to § 51:1409(E), the prescriptive period begins to run "from the time of the transaction or act which gave rise to this right of act," or in this case, Plaintiff's use of talc products between the 1950s and 1990s. Accordingly, Plaintiff's LUTPA claim prescribed on its face more than twenty years ago. However, Plaintiff's Petition alleges facts that support a finding of *contra non valentem*. "*Contra non valentum* is a jurisprudentially-created exception to the general rules of prescription."[51]    "[T]he doctrine of *contra non valentem* includes a 'discovery rule,' which stipulates that prescription does not begin to run until the injured party discovers or should have discovered the facts upon

---

[46] *Id.* at *9.
[47] *Id.*
[48] *Id.*
[49] *Id.*
[50] Doc. 66-1 at 10.
[51] Dominion Expl. & Prod., Inc. v. Waters, 972 So. 2d 350, 358 (La. App. 4 Cir. 2007).

which the cause of action is based through reasonable diligence."[52] Plaintiff's Petition states that:

> [b]ecause of the latency period between exposure to asbestos and the onset of cancer, and because of the concealment by some defendants of the causes and effects of exposure to asbestos, the Plaintiff did not know nor could she have reasonably known that Plaintiff's injuries were caused by her asbestos exposure until recently, which occurred less than one year prior to the filing of the instant Petition for Damages. Further, Plaintiff only recently discovered her injuries, not more than one year preceding the filing of this Original Petition for Damages.[53]

Accordingly, the Court finds that Plaintiff has alleged sufficient facts to support a finding of *contra non valentem*, and it therefore cannot find that her claim has prescribed at the motion to dismiss phase. Defendant's Motion to dismiss her LUTPA claim as untimely is denied.

### ii.    Failure to State a Claim

Next, Defendant Johnson & Johnson argues that Plaintiff has failed to state a claim against it under LUTPA. To recover under LUTPA, Plaintiff must show that Defendant used "(1) an unfair or deceptive trade practice declared unlawful; (2) that impact[ed] a consumer, business competitor[,] or other person to whom the statute grants a private right of action; [and] (3) which has caused ascertainable loss."[54] "A trade practice is deemed unfair when it offends established policy and when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers . . . [or] business competitors."[55]  In support of her LUTPA claim, Plaintiff's Petition alleges that Defendant Johnson & Johnson deliberately concealed the presence of asbestos

---

[52] Hunters Run Gun Club, LLC v. Baker, No. CV 17-176-SDD-EWD, 2019 WL 3240044, at *5 (M.D. La. July 18, 2019).
[53] Doc. 1-2, ¶24.
[54] Omnitech Intern., Inc. v. Clorox Co., 11 F.3d 1316, 1332 (5th Cir. 1994).
[55] Landreneau v. Fleet Fin. Grp., 197 F. Supp. 2d 551, 557 (M.D. La. 2002) (internal quotations omitted).

in its products, lied to the FDA about the presence of asbestos in its products, misrepresented to consumers that its products were free of asbestos, instituted an industry standard test that it knew would not identify asbestos below a certain level, destroyed evidence of personal injury and asbestos lawsuits, and destroyed samples of talc in which asbestos was identified. The petition alleges that these practices were done with the goal of promoting sales of Johnson & Johnson products and caused Plaintiff physical and financial injury. This Court finds these allegations sufficient to state a LUTPA claim against Johnson & Johnson. Accordingly, Defendant's Motion to Dismiss Plaintiff's LUTPA claim is denied.

## IV.    Breach of Express Warranty

Finally, Defendants move to dismiss Plaintiff's claim for breach of express warranty. Plaintiff does not oppose.

The Louisiana Products Liability Act ("LPLA") "establishes the exclusive theories of liability' under Louisiana law against manufacturers for damage caused by their products."[56] "[T]he LPLA limits the plaintiff to four theories of recovery: construction or composition defect, design defect, inadequate warning, and breach of express warranty."[57] Under the breach of express warranty theory

> a plaintiff must show that "(1) the manufacturer made an express warranty regarding the product, (2) the plaintiff was induced to use the product because of that warranty, (3) the product failed to conform to that express warranty, and (4) the plaintiff's damage was proximately caused because the express warranty was untrue."[58]

---

[56] Fuller v. Eisai Inc., 513 F. Supp. 3d 710, 716 (E.D. La. 2021) (quoting Pramann v. Janssen Pharms., Inc., No. 16-12413, 2017 WL 58469, at *2 (E.D. La. Jan. 5, 2017) (Africk, J.)).

[57] Rhodes v. Covidien LP, No. 18-10667, 2019 WL 2162845, at *2 (E.D. La. May 17, 2019) (Vance, J.)

[58] Fuller, 513 F.Supp.3d at 721 (quoting Guidry v. Janssen Pharms., Inc., 206 F. Supp. 3d 1187, 1199)).

"An 'express warranty' is a representation or statement about a product that affirms the product possesses specified characteristics or qualities."[59] "But an express warranty does not include a general opinion or general praise of a product. Put another way, the plaintiff must allege the content of the warranty and explain how the warranty was not true."[60] The plaintiff must "specify the warranty in question."[61]

Defendant argues that Plaintiff's Petition fails to allege any specific representations that were made by Defendants or explain how those warranties were breached. Further, Defendant asserts that Plaintiff offers no facts that would plausibly demonstrate that Plaintiff was induced into purchasing the alleged products in reliance on any representation by Defendant Johnson & Johnson. The Court agrees. Plaintiff's Petition is void of any allegation that Defendant Johnson & Johnson breached a specific warranty; rather, it states that as a result of Defendant Johnson and Johnson's breach of "implied and express warranties as to the merchantable quality and safety of their products," Plaintiff bought and used the products that she alleges directly and proximately caused her injuries.[62] As such, Plaintiff does not plausibly plead a breach of express warranty claim against Defendant Johnson & Johnson. Accordingly, such claims should be dismissed without prejudice.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss for Failure to State a Claim is **GRANTED IN PART** and **DENIED IN PART**.

---

[59] *Guidry*, 206 F. Supp. 3d at 1199 (citing 2024 La. Rev. Stat. § 9:2800.53(6)).
[60] *Fuller*, 513 F. Supp. 3d at 721 (internal quotations and citations omitted).
[61] Donald v. AstraZeneca Pharms., LP, No. CV 16-17753, 2017 WL 1079186, at *4 (E.D. La. Mar. 22, 2017) (quoting Robertson v. AstraZeneca Pharms., No. 15-438, 2015 WL 5823326, at *5 (E.D. La. Oct. 6, 2015)).
[62] Doc. 1-2. ¶ 150.

**IT IS ORDERED** that Plaintiff's claims for punitive damages from Pecos River and Johnson & Johnson are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's LUTPA claim against Johnson & Johnson survives.

**IT IS FURTHER ORDERED** that Plaintiff's civil conspiracy claim against Johnson and Johnson is **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's breach of express warranty claim against Johnson and Johnson is **DISMISSED WITHOUT PREJUDICE**.

New Orleans, Louisiana this 7th day of August, 2025.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**